## Lucas v. Sawyer *et al.*

17 517<br>97 612

1. **Dower:** POWER OF LEGISLATURE. The dower right of the wife in the real estate of the husband may at any time before the husband's death be enlarged, abridged or entirely taken away.

2. ——— STATUTE. The real property of the husband was sold under execution in 1845; when dower was measured by the common law rule, and the husband died in 1853, when the statute in force provided that the widow should have no dower in property which had been "sold on exe-

cution or other judicial sale." It was held that the dower should be measured by the law in force at the date of the death of the husband, and that the widow was not entitled to dower in the property sold as aforesaid.

*Appeal from Muscatine District Court.*

MONDAY, DECEMBER 12.

DOWER. Petitioner is the widow of Robert Lucas, who departed this life February 7th, 1853. In 1842 a judgment was recovered against said Lucas, upon which an execution issued, and the lands, in which dower is claimed, were sold March 3d, 1845, to one of the present defendants. On the 8th of June, 1846, the land not being redeemed, the purchaser obtained his sheriff's deed. The wife never made any relinquishment of her rights. This action was commenced in April, 1861.

The court below sustained a demurrer to the petition, which presented the above facts, and plaintiff appeals.

*D. C. Cloud* for the appellant.

*Jacob Butler* for the appellees.

WRIGHT, Ch. J. — The time of the marriage of plaintiff to the decedent is not stated, but it is averred and conceded that the husband was seized in fee of the lands during the marriage, and prior to the sale under the execution.

At the time of the sale, the widow was entitled to dower as at common law. By the Code of 1851, § 1394, it was provided that "one-third in value of all the real estate in which the husband at any time during the marriage had a legal or equitable interest, *which has not been sold on execution*, or other judicial sale, and to which the wife has made no relinquishment of her rights, shall, under the direction of the court, be set apart by the executor as her property

in fee simple, upon the death of the husband, if she survive him." This section was repealed by the act of January 24th, 1853 (which took effect July 1st, 1853), and in lieu of the dower therein given, the widow was given dower as at common law in all lands "to which she had made no relinquishment of her rights."

From this statement it will be seen that at the time of the sheriff's sale, and the claim of dower, the common law rule obtained. At the time of the husband's death, the Code of 1851 was in force, and § 1394 obtained in the admeasurement of dower. And the material question, therefore, is, whether plaintiff's right was divested by the sheriff's sale of March 3d, 1845. And for this State, the question is a new one. Several cases have been before us upon the subject of dower, but none of them involved the very *point presented* in this. For discussions upon the general subject in this State, see the following cases: *Davis* v. *O'Ferrall*, 4 G. Greene, 168–358; *Rowland* v. *Rowland*, Id., 183; *Gano* v. *Gilruth*, Id., 453; *Young* v. *Walcott*, 1 Iowa, 174; *O'Ferrall* v. *Davis*, Id., 560; *Corriell* v. *Ham*, 2 Id., 552; *O'Ferrall* v. *Simplot*, 4 Id., 381; *Clark, Adm'r,* v. *Griffith, Ex'r*, Id., 405; *McCraney* v. *McCrany*, 5 Id., 232; *Phares* v. *Walters*, 6 Id., 106; *Westfall* v. *Lee*, 7 Id., 12; *Barnes* v. *Gay*, Id., 26; *Burke* v. *Barron*, 8 Id., 132; *Cavender* v. *Smith*, Id., 360; *Pense* v. *Hixon*, Id., 402.

We repeat, that none of these cases involved the precise question here presented. Those in 4 G. Greene, 168 and 358, 1 Iowa, 174, and 4 Id., 381, may be said to settle and recognize certain rules and principles which should control its disposition; and we therefore make it our first duty to ascertain how far they are applicable. The cases in 4 G. Greene, which the others follow, was where the husband had voluntarily aliened the estate, the wife not joining in the conveyance in the manner required by the statute. At the time of such conveyance, the wife was

entitled to dower as at common law. The husband died after the Code took effect, and under the provisions of which she was entitled to one-third in fee simple. Under these circumstances, it was claimed by the wife that she was entitled, as against the vendee of the husband, to one-third in fee simple. The District Court sustained the claim, but this ruling was, as we think, very properly reversed; this court holding that, as against the alienee, she was only entitled to dower, according to the law in force at the time of the alienation by the husband. It was also held that, as against the prior vendee of the husband, the legislature could not enlarge the dower interest of the wife; that in doing so, there would be an interference with vested rights, or that the effect would be to carve out of the property so conveyed a larger estate than she had at the time the vendee purchased the same. And that this view was correct, cannot be seriously questioned. The position is well sustained by the authorities in this State and elsewhere, as the cases above cited abundantly demonstrate. And see, in addition to these, and the cases therein cited, *Strong* v. *Clenn*, 12 Ind., 39.

It will be seen, however, from these cases, that there was no question but what the widow was entitled to dower, the only controversy being whether she took under the law as existing at the time of the conveyance by the husband, or that in force at the time of his death. And it is observable that they were decided mainly upon the ground that her estate was *enlarged* by the subsequent legislation (§ 1394 of the Code); and that the statute should not have a retroactive operation, so as to lessen the estate actually purchased by the husband's vendee. Whether the same conclusion would have been reached if her estate, under the act in force at the time of the husband's death, had been *less* is not discussed, and of course not determined. Much of the reasoning used, however, would seem to indi-

cate that the rights of the vendee and doweress in such a case would stand upon different. grounds. For, when it is remembered that her claim was denied because it would interfere with vested rights, the same reason would not obtain against the retrospective operation of the stat-ute, where it was for the benefit rather than the injury of such purchaser. It is certainly quite clear that the wife ·was not regarded as having a right vested beyond the reach of legislative interference, prior to the husband's death, or that her right was not to be measured so much by the law as it affected *her*, as by the contract, and the obligations and rights thereby imposed, and arising between the ven-dee and the husband.

It is also noticeable that none of these cases discuss the question, almost at the very foundation of this, and that is when dower assumes the character of a vested right, whether by the marriage and seiz-in, or only after it becomes consummate by the husband's death. This inquiry was started in *Burke* v. *Barron*, 8 Iowa, 132, but its decision was not necessary to the disposition of the case, and was, therefore, left open. Its determination is directly in the path of our present inquiry, and we dispose of it briefly, by saying that while the authorities are not entirely uniform, their decided weight is in favor of the doctrine that the right may at any time before the husband's death, be enlarged, abridged, or entirely taken away. 1 Kent, 418; *Ewing* v. *Noel et al.*, 9 Ind., 39, where the authorities are fully collected, and the doctrine ably discussed; *Strong* v. *Clenn*, 12 Id., 37; *Logan* v. *Walters*, Id., 639; *Giles* v. *Gullim*, 13 Id., 487; *Frantz* v. *Harron*, Id., 509; *Blair* v. *Harrison*, 11 Ill., 384; *Moreau* v. *Detchmendy*, 18 Mo., 522; *Melizot's Appeal*, 17 Penn., 449; Bishop on M. and D., 773, 778; *Moore* v. *The City of New York*, 4 Sandf., 456; *S. C.*, 4 Selden, 110; *Weaver* v. *Gregg*, 6 Ohio State, 547; *Kennedy* v. *Missouri*

1. Dower: power of the legisla-ture.

*Insurance Company*, 11 Mo., 204; *Maguire* v. *Maguire*, 7 Dana, 181; Bishop, §§ 29 to 45; 1 Scribner on Dower, ch. 27; Sedgwick, St. and Const. Law, 635–637.

Many reasons might be adduced to show the propriety and soundness of these decisions, as that marriage and the rights incident thereto are public matters, to be regulated and governed by law; that the obligations arising are, for the most part, created by the public law and subject to the public will, and not to that of the parties; that it is a connection of such a solemn character, and one upon which the public welfare so greatly depends, that society and the public have as great an interest in its regulation as the parties themselves (*Dickson* v. *Dickson*, 10 Yerg., 110;) that its rights and obligations are derived rather from the law than from the contract itself (*Townsend* v. *Griffith*, 4 Har., 440); that it is not strictly a contract, but a *status*, resembling rather the relation of father and child, than that of a *contract* between two parties (Bishop, §§ 29–41); that, by the common law, the legal existence of one of the parties is merged into that of the other; that, as a *status*, it is essentially dependent upon the sovereign will, and is not embraced in the constitutional interdict or acts impairing the obligations of contracts (7 Dana, 181); but it is sufficient to state them, (and others might be added,) without entering at length into their discussion.

Having thus adverted to the true nature of this relation, the rights and obligations arising therefrom, and the time at which the dower assumes the character of a vested right, we have still to inquire, whether § 1394, of the Code of 1851, could or did defeat the plaintiff's claim for dower in the lands in controversy. And, that it did, seems to almost necessarily follow from the positions already assumed, and, as we think, well established. Before the death of the husband, the claim to

dower is inchoate and contingent. Until this time it is competent for the legislature to enlarge, abridge or entirely abolish it, provided, of course, there is no interference with vested rights. Prior to the time of its becoming consummate, she has no vested right to it; and, as a rule, the claim of such an interference could only arise in favor of third persons, as the creditors or vendees of the husband or the like. It is not dower by name, or as understood at common law, to which she is entitled. It is the purpose for which it is reserved, to wit: the support of the wife, which the law favors, and it is within the legislative discretion to direct the character and amount of this support. It may be confined to lands in which the husband had a legal interest, or extended to his equitable interest as well. As between the wife and the heirs, it may be one-third for life or in fee simple, or graduated by the amount of the estate left by the husband. So the legislature may declare what acts of the wife shall amount to a relinquishment of her right; or that her deed shall be effectual to bar the same. And, upon the same ground, it is competent to declare what shall be the effect of a sale of the premises under an execution upon a judgment against the husband. The law may treat the property as belonging to the husband during his lifetime (and so it is, subject to the contingent claim of dower), and declare what acts shall divest the title and vest it in another.

Not only so, but in measuring her rights, as already seen, we look to the law in force at the time of the husband's death, for it is this event which ripens or makes consummate the prior right, which, so long as it rested upon the marriage and seizin, was inchoate only. If there was no law in force at that time giving her the right, then it is extinguished. She cannot take, under a law repealed prior to that time. And, taking under the law then existing, she must take it with its restrictions and limitations,

as well as with its advantages and enlargements, if any. The law acts upon the status of the parties at that time, and upon the property then legally and equitably his, in which she has not relinquished her interest, or in which her right has not been extinguished in the manner required by law. But, we are asked, does the section under consideration, relate to prior transactions or to judicial sales made before the taking effect of the Code? We think this is very clear from the language of the statute, and that it was competent for the legislature to so provide. The statute enlarged the interest of the wife in the husband's real estate, at his death. Under it, she took one-third in fee simple in all lands in which the husband had, during the marriage, an interest *legal or equitable.* But, if she had relinquished her rights, *or if the land had been sold on execution or other judicial sale,* she could not, after the death, assert such right. A controlling reason, doubtless, for the enlargement of this means for her support in the remaining estate, was that her right in some portions of the husband's property had, or may have been, divested by such judicial sale. And, hence, in the subsequent act of January 24th, 1853, as in the acts before the Code, she is remitted to her rights as at common law, but there could be no divestiture by sale under execution.

But finally, as already suggested, if she does not claim under this law, she cannot under any. It is immediate and not prospective merely in its operation. It takes the estate as it finds it at the time of the death, the death occurring under the law. She stands under the law as though she had relinquished her right at a time when she was entitled to but one-third for life. If she had thus relinquished, there could be no claim that the existence of a statute at the time of the death, giving her one-third in fee, would inure to her benefit in the face of her prior relinquishment. And with no more propriety can she prevail

when the right has been divested in the other method prescribed by law. Before his death, an event essential to the consummation of her right, the right had been divested in one of the methods contemplated by the statute, a method as effectual as her voluntary relinquishment. This very point was decided, as we understand the case, in *Frantz* v. *Howard*, 13 Ind., 507 (following *Strong* v. *Glenn*, 12 Id., 37). There the land was sold under execution against the husband in 1844. The statute, under which the doweress claimed, was passed in 1852, and the husband died in 1853. Under such circumstances she was held not entitled to dower, nor an estate in fee of one-third. This decision is· directly in point, and seems to follow naturally and legitimately from the prior adjudications of that court, where this question has undergone the most careful investigation, and is so reasonable in itself, and results so necessarily from the rules and principles governing this relation, and the rights of the parties under it, that we feel free to follow it. See *Galbraith* v. *Gray et al.*, 20 Ind., 290.

The judgment below, sustaining the demurrer to plaintiff's petition, is therefore

Affirmed.