Miller, J.
i. dower : change of'law. From the evidence it appears that, on the 3d day of May, 1854, William Sturdevant entered into a contract with the school fund commissioner of Bremer county, Iowa, for the purchase of the north half of section 5, in township 91, north of range 13 west, at the rate of $1.25 per acre, paying one-fourth of the purchase-money down, the balance payable in ten years, with ten per centum interest; 'that, on the 11th day of December, 1858, William Sturdevant and wife (the present plaintiff) executed a trust deed to C. M. Kingsley, trustee, of the north-west quarter of said section 5, to secure to A. F. Moss $378.87, due and payable July 15, 1859 ; that on the 16th day of June, 1857, a mortgage of the north-east quarter of said section 5 was made by William Sturdevant, in which his wife did not join, to James M. Moss, to secure the sum of $585, payable in one year. This mortgage contained a power to foreclose by notice and sale. It further appears that William Sturdevant removed from the premises thus conveyed to the village of Waverly, Iowa, some time in 1857, and did not afterward return to or occupy the same. On the 14th day of Sep *59 tember, 1859, default having been made in the payment of the money secured by the trust deed to Kingsley, trustee, he sold and conveyed the premises to Artemas Blake, in pursuance with the power granted in the trust deed, for $350. Blake and wife conveyed the same premises to Carlos Norris, September 19, 1859. On the 10th of July, 1862, Carlos Norris filed his petition in the district court in Bremer county, and, on the 23d day of July, 1862, obtained a decree by default against William Sturdevant (his wife not being a party), that he should bring the said school fund commissioner’s contract into court forthwith, and assign and transfer so much thereof as covered the north-west quarter of said section 5 — the land included in the trust deed — to Carlos Norris. Whether such assignment was ever made does not appear in the record. It does appear, however, that an affidavit was filed at the same term of the district court, showing that Sturdevant was in contempt in not obeying the decree entered against him. On the 4th day of December, 1862, Norris having paid to the State the balance due on the land, a patent was issued by the State of Iowa to him for said premises, being the north-west quarter of section 5, in township 91 north, of range 13 west.
It further appears, that, default having been made in payment of the mortgage of the N. E. quarter of said section 5 to James M. Moss, the same was foreclosed in pursuance with the power therein granted, by notice and sale, and sold to A. P. Goddard, July 31, 1858, and a deed for the same made and delivered August 2,1858. Goddard conveyed the same land to A. H. Norris, December 24, 1863. The governor of Iowa, on the 9th day of July, 1863, issued a patent to John P. Ellis, for this land covered by the mortgage to James M. Moss, and, on the 10th of February, 1864, Ellis conveyed the same to A. H. Norris — the purchaser under the foreclosure. On the 10th day of September, 1866 the treasurer of Bremer county *60 conveyed the N. E. quarter of said section 5 to A. H. Norris for the taxes of 1856, 1857, 1858 and 1859; and on the 18th of January, 1867, deeded the same land, for the tax of 1861. On the 25th of August, 1866, A. H. Norris conveyed 60 acres off the east side of the N. E. quarter to Carlos and Kate Norris, and, on the 5th of January, 1867, he made a further conveyance to Carlos of the balance of the half section, except fifteen acres, described in the deed.
"William Sturdevant died August 21, 1865.
The title' which William Sturdevant obtained in the land purchased by him of the school fund commissioner, was an equitable one, that might ripen into a legal one upon his making full payment and obtaining a patent from the State. He paid one-fourth of the purchase-money in hand, but failed to make any further payments. He and his wife (the plaintiff) conveyed his equitable title' to one-quarter section of the land by the trust deed. • Default was made and his interest was sold by the trustee. Wm. Sturdevant, alone, mortgaged his interest in the other quarter section. He failed to pay the money secured by the mortgage, and it was foreclosed by notice and sale according to its terms and the íaw then in force.
See Code of 1851, §§ 2071 to 2081, inclusive.
The balance of the purchase-money due the school fund was paid by the respective purchasers at the trustee’s sale and mortgage sale, and patents issued to them respectively. All this occurred during the life-time of Wm. Sturdevant. Is the plaintiff, then, as his widow, entitled to dower in any of these lands ? '
The statute regulating dower, in force at the time of the death of Wm. Sturdevant, is the act of April 8,1862, chapter 151 of the laws of the ninth general assembly, and is as follows:
“ One-third in value of all the real estate in which the husband at any time during the marriage had a legal or equitable interest, which has not been sold on execution or *61 other judicial sale, to which the wife has made uo relinquishment of her right, shall, under the direction of the court, be set apart by the executor, administrator or heir, as her property in fee simple, on the death of the husband, if she survive him.”
The appellant’s counsel argues that the statute in force at the time of making the trust deed and mortgage by plaintiff’s husband should govern the case at bar, and they cite former decisions in this court, to wit: Davis v. O ’Ferrell, 4 Gr. 168; Claussen v. La Franz, 1 Iowa, 226; O'Ferrell v. Simplot, 4 id. 381; Lucas v. Sawyer, 17 id. 517, and several New York cases, to sustain this position.
The law in force at the time of making the deed of trust and the mortgage is section 2477 of the Revision of 1860, which was repealed by the act of April 8, 1862.
The law of the Revision, section 2477, gave to the widow “ one-third in value of all the real estate in which the husband at any time during the marriage had a legal or equitable interest, and to which the wife has made no relmgwishmmt of her rights, as her property in dower upon the death of the husband, if she survive him, said estate in dower to remain as at common law.”
It is immaterial which law applies, so far as relates to the one quarter section — the north-west quarter of section five — because under either the widow’s dower is barred by her joining with her husband in the conveyance. Grapengether v. Fejervary, 9 Iowa, 163, 173; 4 Kent's Com. 59, 60; Catlin v. Ware, 9 Mass. 218; Edwards v. Sullivan, 20 Iowa, 502; Shields v. Key's Adm'r., 24 id. 298.
The plaintiff joined with her husband in the trust deed to Kingsley, and she is therefore barred of her dower in the land thereby conveyed, and which was subsequently sold by the trustee.
Excepting the case of Lucas v. Sawyer, 17 Iowa, 517, *62 the cases in this court, cited by appellant’s counsel, would seem on a casual examination to sustain his position, viz., that the law in force at the time of the alienation by the husband is to govern in regard to dower; but that case, which we think is directly in point, holds otherwise. In that case the real property of the husband was sold under execution in 1845, when the widow’s dower was measured by the common-law rule, and not barred by a sale on execution. The husband died in February, 1853, when the statute in force provided that the widow should have no dower in property which had been “ sold on execution or other judicial sale.”
And it was held that the dower should be measured by the law in force at the date of the death of the husband, and that the widow was not entitled to dower in lands sold on execution under the former statute.
Wright, Ch. J.,
cites and reviews the former decisions of this court on the question, and while approving them under the special circumstances surrounding each case, says: “ It will be seen, however, from these cases, that there was no question but that the widow was entitled to dower, the only controversy being whether she took under the law as existing at the time of the conveyance by her husband, or that in force at the time of his death. And it is observable that they were decided mainly upon the ground that her estate was enlarged by the subsequent legislation, and that the statute should not have a retroactive operation, so as to lessen the estate actually purchased by the vendee.” The learned chief justice further says: In measuring her (the widow’s) rights, as already seen, we look to the law in force at the time of the husband’s death, for it is this event which ripens or makes consummate the prior right, which, so long as it rested upon the marriage and seizin, was inchoate only. If there was no law in force at that time giving her the right, then it is extinguished. She cannot take under a law repealed *63 prior to that time. And taking under the law then existing, she must take it with its restrictions and limitations, as well as with its advantages and enlargements, it any.” The law acts upon the status of the parties at the time of the husband’s death, when the dower interest, if any, vests, and upon the property in which her husband during the coverture had a legal or equitable interest, in which she has not relinquished her rights, or in which her rights have not been extinguished in the manner provided by law.
We have seen that the plaintiff did not join with her husband in the mortgage to Moss of the north-east quarter of the section purchased from the school fund commissioner. We have also seen that this mortgage was foreclosed and the husband’s interest in the land sold thereunder, in a manner prescribed by the law then in force, so that at the time of his death his equitable title to the premises was entirely extinguished by this foreclosure and sale.
2. — foreoios- and'sale. It remains to be seen whether the foreclosure of the mortgage, by notice and sale in the manner provided by statute, without proceedings in court, comes within the meaning of the term “ other judicial saleP 33y the term “judicial sale,” strictly speaking, is meant a sale by authority of some competent judicial tribunal, by an officer authorized by law for that purpose. 1 Bouv. Law Die. 681.
If the land had been sold on execution issued upon a general judgment against the husband in his life-time, the plaintiff would have been barred of her dower, as held by this court in the case of Lucas v. Sawyer, supra. If the mortgagee had proceeded by action in the district court to foreclose the mortgage — which he might have done — and the husband’s interest in the land had been sold on special execution, the widow’s dower would, upon the same principle and authority, have been barred, although *64 she had not been made a party to the foreclosure. A judgment at law on the note, secured by the moi’tgage, and a sale of the land on a general execution, would bar the widow’s dower, whether the estate of the husband be a fee simple or a mere equity, and we can see no reason why a foreclosure' and sale on special execution will not have the same effect.
The question then recurs, does a foreclosure by notice and sale, under the provisions of chapter 118 of the code of 1851, have the same operation to bar dower as a sale on a general or special execution ? Although this statutory mode of foreclosure by notice and sale is not strictly within the definition of a “judicial sale,” yet the legislature authorized this method of foreclosure, and enacted that sales made in accordance with the provisions of the first ten sections of chapter 118 of the code of 1851 “ are valid in the hands of bona fide purchasers, whatever might be the equities between the mortgagor and mortgagee. Code of 1851, § 2081. And, if the legislature possessed the constitutional power to authorize this species of foreclosure, we see no good reason why the same consequences should not attach as in a foreclosure by action in court and sale on execution. The authority of the legislature in the premises is not questioned.
It follows, from the foregoing views, that the plaintiff is not entitled to dower in any portion of the premises in controversy, and the effect of the several tax sales need not be considered. .
The decree of the district court is affirmed.
■Affirmed.