12  337'
38  134

## TENNANT, v. BROOKOVER.

### Decided March 30, 1878.

1878.
Special Term.

1. When the act of the legislature, approved Dec. 9, 1873, entitled "an act to amend and re-enact chap. 80 of the Code, concerning the maintenance of illegitimate children," went into operation, it did not oust the jurisdiction of the circuit courts to hear and determine cases of bastardy, where recognizances had theretofore been given, requiring the defendant to appear at the next term of the circuit court and answer the charge.

2. After the passage of said act, proceedings, thereafter had in the circuit courts, should conform, as far as practicable, to the requirements of said statute.

3. Under chap. 80, of the Code, *any justice* of *any* township might issue a warrant in a bastardy case, whether the woman, or defendant either, resided in said township, or not.

4. When a witness, on cross-examination with a view to impeach her, is asked if she did not at such a time and place tell so and so, such and such things, and answers that she did not, she may on re-examination state, what she did, at the same time and place, say to the same person on the subject, if it is relevant to the issue.

5. In rendering judgment in a bastardy case, it is not error for the court to order the defendant to pay to the overseer of the poor for the maintenance of the child so much per year, for a year or years, before the judgment was rendered, and require bond to be executed with sufficient sureties to secure the payment thereof, although a number of the payments may be due at the time the judgment is rendered, and the bond executed.

6. Judgment for costs in favor of the "overseer of the poor for the use of the woman," where the case proceeds in the name of the woman, is not an error, of which the defendant can complain.

*Supersedeas*, granted upon the petition of Francis Marion Brookover, to a judgment of the circuit court of Monongalia county, rendered on the 18th day of March, 1875, in a proceeding of bastardy, wherein Mary Catharine Tennant, a woman under the age of twenty-one years, was plaintiff, and said Brookover was defendant.

The Hon. C. S. Lewis, late judge of the second judicial circuit, presided below.

JOHNSON, JUDGE, furnishes the following statement of the case:

On the 27th day of September, 1873, Mary Catharine Tennant made complaint under oath before Simon P. Tennant, a justice of Monongalia county, in which she declared, that she was an unmarried woman, and had resided in said county for one year next preceding the date of her complaint, and that she was, on the 20th day of October, 1872, delivered of a male bastard child, and that Francis Marion Brookover, of said county, was the father of said child. The said complaint was reduced to writing and signed by the justice. On the same day the said justice issued a warrant against the said Brookover, reciting the said complaint, commanding the officer, to whom it was directed, in the name of the State to "apprehend and bring before some justice of the peace in and for said county and State, if he be found in said county, the body of the said Francis Marion Brookover, to answer the said accusation and complaint, and to be further dealt with according to law."

The said warrant was signed : "Simon P. Tennant, justice of the peace."

The said warrant was executed by bringing the said defendant before said justice; and he according to law recognized him to appear, on the first day of the next term of the circuit court of said county, to answer said charge, and to abide by and perform the order of said court in relation thereto.

He made his appearance before the circuit court at the time required, and the cause was docketed.

The cause proceeded in the name of the woman. The defendant moved the court to dismiss the case for want of jurisdiction; which motion was overruled. The defendant then moved the court to quash the complaint, warrant and recognizance in the cause, for reasons apparent on the face of those papers respectively; which motion after argument was overruled. The defendant then pleaded not guilty; and issue was then joined; and the case was continued until the next term. At the September term, 1874, the case was again continued. At the March term, 1875, the case was tried by a jury, and a verdict of "guilty" found against the defendant. The defendant moved the court to arrest the judgment, because the court had no jurisdiction of the case, and because, as was alleged, the plaintiff was an *infant* and could not prosecute the suit in her own name.

The court overruled this motion, and entered judgment : " that the defendant pay to the overseers of the poor of that county, for the maintenance of said child, at the rate of $50.00 for each year, payable at the end of each year, from the 17th of September, 1873, to the 20th day of October, 1879, unless it sooner die ; and that said defendant shall give bond in the penalty of $650.00, with such sureties as may be deemed sufficient by the court, for the performance of this order." On the same day the defendant executed the required bond, which was recited in the judgment; and the judgment concludes: "and it is further considered, that the overseers of the poor, for the use of the plaintiff, recover against the defendant the costs by her about this suit expended."

1878.
Special Term.

Tennant
v.
Brookover.

Two bills of exceptions were taken to the ruling of the court upon the trial, which form a part of the record. One to the judgment of the court in overruling the defendant's motion in arrest of judgment; and the other, to the admission of certain testimony. The latter bill shows, that while the plaintiff was giving her testimony in her own behalf, on cross-examination the defendant's counsel propounded the following question: "Did you not say to Mary Youst at her house, before the birth of your child, when speaking of whom the father of it was, that 'pap' or 'daddy' said it belongs to George Wells, but that he was so damned *onry*, that nothing could be made off him, or words of like import and meaning?" To which question she replied "No sir, I did not tell her any such thing."

After the cross-examination the plaintiff's counsel, said to witness: "You were asked by defendant's counsel, whether or not you had not stated to Mary Youst, that" &c. repeating the question propounded by defendant's counsel, and added: "Now please state what you did say to said Mary Youst, if anything on that subject at that time."

To which she answered, after objection made by defendant, and overruled: "I told her, that Francis M. Brookover was the father of the child; and I did not tell her any thing about Wells."

To the judgment in the case a *supersedeas* was granted.

*P. H. Keck*, for plaintiff in error.

*Berkshire and Sturgiss*, for defendant in error.

JOHNSON, JUDGE, delivered the opinion of the Court:

Syllabus 1

The question, that first confronts us, is, had the court jurisdiction to try the case? The warrant was issued on the 17th day of September, 1873, under which the defendant was arrested on the charge; and on the 19th

day of the same month he was by the justice required to enter into a recognizance, to appear before the *circuit court* of the county, on the first day of the next term thereof, to answer the charge &c.; which he did. The warrant issued under section 1 of chap. 80 of the Code of W. Va. which among other things provides, that "on such examination, unless the child be three years old or upwards, the justice shall issue a warrant directed to the sheriff of, or any constable in any county where the accused may be, requiring him to be apprehended, and taken before a justice of any township of the county, in which he may be found, and it shall be the duty of such justice, to require the accused to enter into a recognizance, with one or more good securities, in a sum not less than $100.00 nor more than $500.00 dollars, conditioned for his appearance at the next term of the *circuit court* of the county, in which such warrant was issued, to answer said charge, and to abide by and perform the order of the court in relation thereto." The case was docketed in the name of the woman as plaintiff, in the circuit court of the county of Monongalia, on the 10th day of March, 1874, when the defendant moved the court to quash the warrant &c., for errors apparent on the face of the papers, and also to dismiss the case for want of jurisdiction; which motion the court overruled, and the defendant pleaded not guilty. The case was twice continued; and the trial had at the March term of said court in 1875.

The Legislature passed an act approved on the 9th day of December, 1873, entitled, "an act, to amend and re-enact chapter 80 of the Code, concerning the maintenance of illegitimate children."

This statute differs from said chapter 80 in the following particulars:

1st. The woman "may go before a justice of the peace of the county, in which she has resided" &c., instead of "before a justice of any township of the county, in which she has resided" &c.

1878.
Special Term.

Tennant
v.
Brookover.

2d. " On such examination, unless the child be three years old or upwards, the justice shall issue a warrant directed to the sheriff, or a constable in any county, where the accused may be, requiring him to be apprehended, and taken before a justice of the county, in which he may be found ; and it shall be the duty of such justice, to require the accused to enter into a recognizance, with one or more good securities, in a sum not less than $100.00 and not more than $500.00, conditioned for his appearance at the next term of the county court of the county, in which such warrant issued, to answer said charge, and to abide by and perform the order of the court in relation thereto," in lieu of that part of the 1st section of chapter 80, first quoted.

3d. "After such accusation shall have been made, proceedings thereupon may be had, either in the name of the woman, or of *the overseers of the poor of* —— *county,*" in lieu of " after such accusation shall have been made, proceeding thereupon may be had, either in the name of the woman or of *the supervisors of the county.*"

4th. The 4th section provides, that if the accused be found guilty, the court shall order him to pay to *the overseers of the poor of the county,* for the maintenance of the child, such sums &c., in lieu of to the *supervisors of the county* ; and that the *woman and overseers of the poor* may consent to his discharge, instead of " the woman and said supervisors ;" substituting throughout the chapter, " *overseers of the poor*" for " supervisors of the county."

5th. Section 5 provides for recovering on motion, made in the county court in the name of the *overseers of the poor* against the father and his sureties, for a breach of the bond ; in lieu of such motion being made in the circuit court, in the name of *the supervisors of the county.*

The foregoing are all the material changes made in the statute. The last statute went into effect upon its passage. The question now is, did the passage of the

act of 1873 take from the circuit courts their jurisdiction to try warrants of bastardy, which had issued and under which recognizances had been taken, requiring defendants to appear at said courts, before the passage of said act? The statute certainly does not, in *express* terms, take away such jurisdiction. It does in effect as to *future cases,* deny to the circuit courts jurisdiction, as it makes no provision whatever for such warrants to be tried there, and directs, that the recognizance shall require the accused to appear at the next term of the county court and answer said charge, &c.

It is a sound rule of construction, that a statute should have a prospective operation only, unless its terms show clearly a legislative intention, that it should operate retrospectively. Cooley Con. Lim. 370; Sedg. on Stat. & Con. Law 164; *Duval, adm'r &c.,* v. *Malone et al.,* 14 Gratt. 24; *Philips* v. *Commonwealth,* 19 Gratt. 522. Mr. Sedgwick says at page 164: "But it also appears to be clearly settled in England, that the rule, to give statutes a prospective operation, is one of construction merely; that it will yield to the intention of the legislature, if clear beyond doubt; and that the only question is, whether the retroactive intention is sufficiently express. * * * * In this country the same opposition to giving statutes a retroactive effect has been manifested; and such is the general tenor of our decisions."

The facts in the case of *Philips* v. *The Commonwealth,* 19 Gratt. 485, showed, that on the 24th of June, 1867, the prisoner was committed to the jail of Henrico county by a justice, that he might be examined before the county court of said county for the murder of Mary Emily Philips; that he was examined before said county court, the trial commencing on the 2d of July, 1867. The county court sent him on for trial to the circuit court. At the October term of the circuit court in 1867, the prisoner was indicted for the said murder, and was tried and convicted in said circuit court, at a special term thereof on the 9th day of July, 1868, after a protracted

trial, of murder in the first degree, and sentenced according to the verdict, and obtained a writ of error, to the judgment of the court; and one ground of error assigned was, that the circuit court had no jurisdiction of the case. Judge Rives, who delivered the opinion of the court, as to the question of jurisdiction said: " It clearly and solely depends upon the effect and application we shall give to the act of 27th April, 1867, * * It is entitled 'an act to revise and amend the criminal procedure.' "

The act provided, that it shall go into operation on the 1st of July, 1867, and repealed the law in relation to examining courts, and conferred jurisdiction upon the county courts to try all cases of felony, except when the prisoner elected to be tried in the circuit court. In this case the prisoner made no such election or demand. Judge Rives said, in discussing the question whether the law was *prospective* or *retrospective*, on p. 522, 523: " Whenever this law was to take effect as to the commitment, it also took effect as to examining courts; and so long as this law could not affect or alter the commitment for examination, its legal concomitant or incident— the examining court—was *unrepealed*. Upon what commitments then was this act of April 27, 1867, designed to operate? There seems to me but one reasonable answer, *upon commitments occurring on or after the 1st day of July*, 1867. Any other answer would seem to involve the absurdity of comforming by way of anticipation to a law not in operation." The judgment in the case was affirmed.

It seems clear to us, that there is nothing in the act of 1873, that by implication even takes away, or was designed to take away, the jurisdiction of the circuit court in bastardy cases, where the defendants had been theretofore recognized, to appear before the circuit court and answer the charge &c. The whole language of the act is prospective in its character; there is not one word said about cases already pending, and the only clause,

with regard to where such cases should be tried, clearly indicates, that it refers to cases commenced after the act was passed. It says: "It shall be the duty of such justice to require the accused to enter into a recognizance &c., for his appearance at the next term of the county court, in which such warrant issued, to answer said charge, and abide by and perform the order of the court in relation thereto." The court properly refused to dismiss the case, or arrest the judgment for want of jurisdiction, as it clearly had jurisdiction. In the view we have taken of this case, the authorities cited for plaintiff in error on the question of jurisdiction are not pertinent. The proceedings in the circuit court however, after the passage of the act of 1873, should have conformed as far as practicable to that act, (sec. 9, chap. 13, Code,) and we believe they did.

It is also insisted, that the court erred in refusing to grant the warrant, &c., "because it does not thereby appear, that the said plaintiff, Mary C. Tennant, had resided for as much as one year in the county before the *birth of the child*, and if it did, it does not appear in what *township* or *district* of the county she resided, nor that she resided in the same district, that the justice Simon P. Tennant did, and because the warrant was not returnable to or before a justice of the township or district, in which the defendant was found." The law did not require, that the woman, who made the complaint, should have resided a year in the county before the birth of the child, but "for the preceding year," that is, for a year preceding her complaint.

It was not necessary for the warrant to show, in what district or township the woman resided, nor that she resided in the same district or township, in which the justice, before whom she made the complaint, resided, for the language of the law was at the time the complaint was made: "Any unmarried woman may go before a justice of *any* township of her *county*, in which she has resided for the next preceding year, and accuse any

*Margin:* 1878. Special Term. Tennant v. Brookover. — Syllabus 2 — Syllabus 3

person of being the father of a bastard child, of which she has been delivered." If she has resided for a year in the county, she might go before any justice in any township thereof and make the accusation. Neither was it necessary for the warrant to be returned before a justice of the township or district, in which the accused was found. The law required, if it was a proper case, the justice to issue a warrant directed to the sheriff of, or a constable in any county where the accused may be, requiring him to be apprehended and taken before a justice of *any* township of the county, in which he may be found. The warrant substantially complied with the statute, and the best evdence, that the defendant was found in Monongalia county, is that he was brought before the same justice who issued the warrant, two days after it was issued, and required to give a recognizance for his appearance at the next term of the circuit court. The court properly overruled the motion to quash.

It is also insisted, that the court erred in permitting the plaintiff, while giving her evidence in the case, after having been asked on cross-examination, for the purpose of laying a ground to impeach her testimony: "Did

you not say to Mary Youst at her house before the birth of your child, when speaking of whom the father of it was, that "pap"or "daddy"said it belongs to George Wells, but that he was so damned *onry* that nothing could be made off of him, or words of like import and meaning?" and after answering, " no, sir ; I did not tell her any such thing ;" in answer to the question put, on reexamination : "Please state what you did say to Mary Youst, if anything, on that subject at that time," to say " I told her, that Francis M. Brookover was the father of the child; and I did not tell her anything about Wells."

Was it error, to permit her under the circumstances to make the answer to the question ? Mr. Greenleaf in his work on Evidence, vol. 1, section 462, says : "It is

not enough to ask him the general question, whether he has ever said so and so, nor whether he has always told the same story; because it may frequently happen, that upon the general question he may not remember whether he has so said; whereas, when his attention is challenged to particular circumstances and occasions, he may recollect and explain what he has formerly said. This course of proceeding is considered indispensable, from a sense justice to the witness; for as the direct tendency of the evidence is to impeach his veracity, common justice requires, that by first calling his attention to the subject he should have an opportunity to recollect the facts, and if necessary, to correct the statement already given, as well as by a re-examination to explain the nature, circumstances, meaning and design of what he is proved elsewhere to have said."

The question put to the witness, by defendant's counsel was clearly relevant; and the defendant could then have contradicted her by Mary Youst or any one, who heard her make the statement at the time and place designated, and she would clearly under the law, we think, have had the right to have been again put upon the witness stand, to say what she did say at that time on the subject of inquiry, it being relevant to the issue. The record does not show whether the contradicting witnesses were introduced or not; but when the question was propounded to her upon the very question at issue, whether the defendant was the father of her child, tending to create the impression upon the jury, that she had not always told the same story on the subject, as well as to permit them to contradict her, we think, it was not error on re-examination, before the impeaching witness or witnesses were introduced, to permit her to say to the jury, what she did say to the party named, if anything, on that subject at the same time and place.

It is assigned also as error, that the plaintiff could not prosecute the suit, because she was an *infant;* and that for that reason the judgment ought to have been arrested.

1878.
Special Term.

Tennant
v.
Brookover.

Syllabus

As the record does not show, that she was an infant, it is not necessary to consider, whether she could, or could not, prosecute the suit in her own name.

It is insisted, that the court erred in rendering the judgment it did, "in ordering the defendant to pay to the overseers of the poor of the county, for the maintenance of the said child, at the rate of $50.00 per year, payable at the end of each year, from the 17th of September 1873, to the 20th October 1879, unless it sooner die, and requiring the defendant to give bond in the penalty of $650.00, with security for the performance of the order.

1st. " Because the order required an impossibility. The order was made,on the 18th of March, 1875 ; whereas the first installment became due on the 17th of September, 1874, six months before the judgment was rendered."

2d. " Because it required a bond to be given with such impossible condition."

The statute says : "if he (the defendant) be found guilty, the court shall order him to pay to the overseers of the poor of the county, for the maintenance of the child, such sums as it may deem proper for each year, until such time as the court may appoint, unless it sooner die, and shall order the father to give a bond in such penalty and with such sureties, as it may deem sufficient for the performance of the order.

This is what the court did. While it was not possible for the defendant to go back six months and pay the first installment, yet it was possible for him to pay it, when he executed the bond, which would answer every practical purpose. The language of the statute is : "He shall order him to pay, &c., for each year, until such time as the court shall appoint, unless it sooner die, &c." Now if the defendant should delay the trial of the cause by continuances for a long time, and the court should, fix the payments "for each year" in the future only, and the child should soon thereafter die, the defendant would

not only get off very easily, but the mother, would have had all the care of the child in its first year, without anything for its maintenance from the one whose duty it was to support it.

It was also assigned as error. that the court gave costs to the overseer of the poor for the use of the plaintiff, instead of to the plaintiff herself.

If any one could complain of this, it would be the plaintiff herself, certainly not the defendant, as it could make no difference to him, to whom the costs were paid,

The judgment of the circuit court is affirmed with costs and damages.

The other Judges concurred.

JUDGMENT AFFIRMED.