THORNBURG v. THORNBURG, ADM'R et al.

Decided November 12, 1881.

*(PATTON, JUDGE, absent.)

1. The provision in the Code of 1868, chapter 65, section 7, declaring: "if a wife voluntarily leave her husband without such cause, as would entitle her to a divorce from the bond of matrimony, or from bed and board, and without such cause and of her own free will be living separate and apart from him at the time of his death, she shall be debarred of her

*Submitted before he came upon the bench.

dower and inheritance," is not restricted, but embraces within its power a widow, who had, nine years before the said act passed, "left" her husband without such cause, as is specified in the act, and which "leaving" or "desertion" *continued* for two years after the passage of the act until his death, and who was living separate and apart from her husband, when he died; and under such act she is therefore barred of her dower and inheritance in her husband's estate.

2. The Legislature had the power to pass said act. A wife's right of dower, so long as it remains inchoate, is subject absolutely to the control of the Legislature, which may modify or destroy it at will without exceeding its constitutional limits; and this right of dower becomes consummate and vested only by the death of the husband.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Ohio, rendered on the 17th day of December, 1873, in a cause in said court then pending, wherein Amanda Thornburg was plaintiff, and David M. Thornburg, administrator, and others were defendants, allowed upon the petition of said plaintiff.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the decree appealed from.

The facts of the case are fully stated in the opinion of the Court.

*R. G. Barr* for appellant relied upon the following authorities: 2 Dan. Chy. Pr. 984, 1003; 2 Phillips 5, 9; *Id.* 127; *Id.* 453; Pott. Dwar. on Stat. 163, 164; Cooley Con. Lim. 93 and cases cited; *Id.* 370 and cases cited; 10 Pa. St. 494; 2 Scribner on Dower § 3 and cases cited, § 6; 2 Johns. Cas. 29; 4 Munf. 251; Acts 1848-9, ch. 101; Cord. Marr. Wom. 265; 25 Gratt. 587; 12 Gratt. 385; 11 Leigh 476; 2 Leigh 29; 2 Scribn. Dow. § 21; *Id.* § 16; 6 McLean 422; 21 Ga. 161; 18 Mo. 522; 101 Mass. 339; 10 B. Mon. 467; 7 W. Va. 139.

*Henry M. Russell* for appellees cited the following authorities: Cooley Con. Lim. 360, 361; 2 Scribner on Dower 17; 8 N. Y. 110; 22 N. Y. 517; 46 N. Y. 571; 17 Pa. St. 449; 46 Me. 9; 17 Ia. 517; 30 Ia. 65; 9 Ind. 37; 12 Ind. 37; *Id.* 639; 13 Ind. 487; *Id.* 507; 51 Ind. 423.; 6 Ohio St. 547; 2 Mich. 93; 2 Dill. C. C. 446.

*E. G. Cracraft* for appellees cited the following authorities: Story Eg. Pl. § 878; 6 W. Va. 168; Story Eg. Pl. §§ 244, 258; 2 Rob. (old) Pr. 309, 310; 4 W. Va. 186; Code, ch.

134, § 4; 5 W. Va. 264; Story Eg. Pl. § 881; 10 W. Va. 35; 12 Gratt. 320; 10 W. Va. 59; Code, ch. 130, §§ 22, 23.

JOHNSON, PRESIDENT, announced the opinion of the Court:

In 1857 Amanda Thornburg and Thomas Thornburg were married; and in 1871 Thomas Thornburg died. In December, 1871, Amanda Thornburg filed her bill in the circuit court of Ohio county claiming dower in the real estate, of which the said Thornburg died seized, and her distributable share of his personal estate. The answer to the bill averred, that said Amanda Thornburg had voluntarily and of her own accord abandoned her husband without such cause, as would entitle her to a divorce either from the bonds of matrimony or from bed and board, and without such cause and of her own free will was living separate and apart from her said husband at the time of his death, and they therefore insisted that she was barred of her dower and of any right to a distributable share of the personal estate of the said Thomas Thornburg.

The depositions show, that Mrs. Thornburg of her own free will left her husband about the year 1860 without such cause, as would entitle her to a divorce from the bond of matrimony or from bed and board, and of her own free will and without such cause as would have entitled her to a divorce either from the bond of matrimony, or from bed and board, was living separate and apart from her said husband at the time of his death; and it does not appear from the record, that she either attempted or desired to return to him, after having so left him in 1860; and it appears therefore, that said desertion continued until the time of his death. There is no attempt made in the answers or proofs to show, that Mrs. Thornburg was at any time guilty of adultery.

The court in its decree held, that she was barred of her dower and from any distributable share in the personal estate of the said Thomas Thornburg. From this decree the plaintiff appealed.

Two preliminary questions are presented. It is claimed by counsel for appellant, that the decree of the court is erroneous, because it states, that the cause was heard upon depositions on each side, " so far as they were free from exceptions," without stating what evidence was read and what rejected.

This Court has all the evidence before it, that was before the circuit court; and we can see from that evidence, what was proper to be read on the hearing and what improper; and if there is sufficient evidence, the objections to which ought to have been overruled, together with evidence unexcepted to to sustain the decree, the decree in this respect is not prejudicial to the appellant, and the evidence is amply sufficient to sustain the decree.

It is also assigned as error, that the court sustained the demurrer to the plaintiff's replication to the answer of the defendants. The replication amounted to a general replication, and having had the benefit of all the evidence of the plaintiff filed in the cause, she was not prejudiced by entering the demurrer to the special replication.

It is claimed, that under the statutes the plaintiff was not barred of her dower and distributive share of the personal estate. At the time the plaintiff left her husband, the Statute, chapter 100, section 7, Code of 1860 provided, that " if a wife of her own free will leave her husband and live in adultery, she shall be barred of her dower, unless her husband be afterwards reconciled to her and suffer her to live with him." This statute appears in the Code of Virginia of 1819 and 1849 in precisely the same language, and so continued until the change made in the Code, by the act of 1868, when it was amended, and the section now is as follows: " If a wife of her own free will leave her husband and live in adultery, she shall be barred of her dower and of her inheritance in his estate, unless her husband be afterwards reconciled to her and suffer her to live with him; or if she voluntary leave her husband without such cause, as would entitle her to a divorce from the bond of matrimony or from bed and board, and without such cause and of her own free will be living separate and apart from him at the time of his death, she shall be barred of her dower and of her said inheritance." Code of 1868, chapter 65, section 7.

Did the said amendment, for the first time incorporated into the Code of 1868, have a retrospective operation? The policy of the Legislature, that adopted the said amendment, as well as of the Legislature, that passed the first statute, was evidently in the interest of social order to prevent wives from separating from their husbands. The first statute did

not bar the wife of her dower, when she merely left her husband of her own free will; but she should suffer that loss, if after having left him she should "live in adultery." After the passage of that act every wife knew, that the consequence of her leaving her husband of her own free will and living in adultery was the loss of her right of dower in his estate. But in 1868 the consequences of such abandonment, even if she did not live in adultery, was the loss of her dower and inheritance. It is a sound rule of construction, that a statute should have a prospective operation only, unless its terms show clearly a legislative intention, that it should operate retrospectively. Cooley's Con. Lim. 370, and cases cited: *Tenant* v. *Brookover*, 12 W. Va. 337; *Curran* v. *Owens*, 15 W. Va. 226. Is there anything in the terms of the statute of 1868, to indicate a legislative intent, that it should have a retrospective operation? We think not.

If it does not have such retrospective operation, it is contended, that it has no application to the facts in this case. In *McGraney* v. *McGraney*, 5 Clarke (Ia.) 232, it was held, that where the cause for divorce called for by the statute is a *continuing* one, if the cause was continued after the passage of the act, the period required therein for its continuance, it is sufficient, though the cause may have commenced before the enactment of the statute. Wright, C. J., in that case, says: "The desertion is alleged to have taken place in August, 1837. The act giving a right to a divorce for desertion of one year, and under which this divorce was granted, was passed January 17, 1840, and the petition for divorce was not filed until in October, 1841. More than one year elapsed then after the passage of the law, before the bill was filed. When the cause called for by the statute is a continuing one, although it may have begun before the enactment of the statute, yet if it continued after the passage the period required therein, this is sufficient and the case comes within the act." See also opinion of Parker, C. J., in *Clark* v. *Clark*, 10 N. H. 391; also in *Greenlaw* v. *Greenlaw*, 12 N. H. 203; *Hare* v. *Hare*, 10 Tex. 355; *Crossman* v. *Crossman*, 33 Ala. 486; *Benkert* v. *Benkert*, 32 Cal. 469; *Bailey* v. *Bailey*, 21 Gratt. 43; *contra* *State* v. *Deaton*, 65 N. C. 496.

The "desertion" or "leaving" of a husband or wife, is a continuing offence. When once commenced, it is presumed

to continue, until the contrary appears, *Bailey* v. *Bailey*, 21 Gratt. 43. The wife, who has "left" her husband, may at any time avoid the consequences of such "leaving" by asking in good faith to return; and if in good faith she does return, or asks to be permitted so to do, and her husband refuses to receive her, then, unless she has been living in adultery, he deserts her, and her desertion is at an end, unless she again forms the intention of deserting him. The language of the statute is: "If she voluntarily leave her husband without such cause as would entitle her to a divorce from the bond of matrimony or from bed and board, and without such cause and of her own free will be living separate and apart from him at the time of his death, she shall be barred of her dower and of her inheritance."

Now, as we have seen, the "desertion" or "leaving" is a continuing offence; and the very moment the Code of 1868 went into operation, imposing forfeiture of dower for desertion continued until the husband's death, Mrs. Thornburg might have avoided the effect of the statute by returning to her husband or by attempting to return. The statute in its terms embraces any desertion *continued* after its passage, up to the time of the husband's death, or any desertion thereafter occurring, however short a time it might continue, so that it continued to the death of the husband. Of course such a statute would not *instanter* apply to a *desertion*, which *commenced* before the passage of the act; a reasonable time would be allowed for the deserting wife to return.

But it is insisted, that if the act does apply in this case, the Legislature had no right to pass any such act; that an inchoate right of dower is a vested right in property, and the Legislature has no power to interfere with it. I have carefully examined this question, and have reached the conclusion, that the proposition laid down by appellees' counsel, that the wife's right of dower, so long as it remains inchoate, is subject absolutely to the control of the Legislature, which may modify or destroy it at will without exceeding its constitutional limits; and that this right of dower becomes consummate and vested only by the death of the husband, is the well settled law of this country. *Moore* v. *Mayor, &c.*, 8 N. Y. 110; *Thurber* v. *Townsend*, 22 N. Y. 517; *Marvin* v. *Smith*, 46 N. Y. 571; *Milizet's Appeal*, 17 Pa. St. 449; *Barbour* v.

*Barbour*, 46 Me. 9; *Lucas* v. *Sawyer*, 17 Ia. 517; *Sturdevant* v. *Norris*, 30 Ia. 65; *Noel* v. *Ewing*, 9 Ind. 37; *Strong* v. *Clem*, 12 Ind. 37; *Logan* v. *Walton*, Id. 639; *Giles* v. *Gullion*, 13 Ind. 487; *Frantz* v. *Harrow*, Id. 507; *Taylor* v. *Sample*, 51 Ind. 423; *Weaver* v. *Gregg*, 6 Ohio St. 547; *Hathon* v. *Lyon*, 2 Mich. 93; *Randall* v. *Kreiger*, 2 Dill. C. C. 446.

" As between marriage and other contracts the distinction in part seems to be this: That marriage is not technically a contract within the protection of the Constitution of the United States; because in the language of Marshall, C. J. 'that clause never was understood to embrace other contracts than those which respect property.' Property is not primarily or solely the object of marriage. It is but an incident that may or may not attach." *Noel* v. *Ewing, supra.* If the clause in the Constitution above referred to applied to marriage contracts, it would be violated by every divorce granted.

We see no error in the decree of the circuit court and it is affirmed.

JUDGES HAYMOND AND GREEN CONCURRED,