# CHARLESTON.

## STATE *v.* MINES.

Submitted June 9, 1893 --Decided November 4, 1893.

1. LIMITATION OF ACTIONS.
   Section 20, c. 35, Code 1868 abolished the common-law rule, that no time runs against the State, and made the State's right subject to statutes of limitations the same as individual rights.

2. LIMITATION OF ACTIONS—CONSTRUCTION OF STATUTES.
   The clause in section 19, c. 55, Acts 1875, "there shall be no limitation to proceedings on judgments on behalf of the State or any claim due the State," did not wholly repeal section 20, c. 35, Code 1868, but only limited its operation by taking out of it judgments

and money claims of the state; and when said clause was itself repealed by Act March 12, 1881, c. 13, such judgments and claims were again brought under section 20, c. 35, and made subject to statutes of limitations.

3. REPEAL—CONSTRUCTION OF STATUTES.

A subsequent statute revising the whole subject-matter of a former one and evidently intended as a substitute for it, though it contains no express words to that effect, must on principles of law as well as in reason and common sense operate a repeal of the former law. *Herron* v. *Carson*, 26 W. Va. 62.

4. REPEAL—CONSTRUCTION OF STATUTES.

When a statute, which repealed a common-law rule is itself repealed, the common-law rule revives. So by common-law, when a statute, which repealed a former statute, is itself repealed, the former statute revives; but this rule of the common-law is changed by section 10, c. 13, of the Code. Under that statute repeal by implication is the same as express repeal.

5. LIMITATION OF ACTIONS—CONSTRUCTION OF STATUTES.

A cardinal rule in interpreting statutes is to construe them as prospective in operation in every instance, except where the intent that they shall act retrospectively is expressed in clear and unambiguous terms, or such intent is necessarily implied from the language of the statute, which would be inoperative otherwise than retrospectively. In doubt, it should be resolved against, rather than in favor of, retrospective operation. *Stewart* v. *Vandervort*, 34 W. Va. 524 (12 S. E. Rep 736.)

6. LIMITATION OF ACTIONS—CONSTRUCTION OF STATUTES.

Statutes of limitations are no exceptions to the rule that statutes are *prima facie* to be given only prospective operation.

7. LIMITATION OF ACTIONS—CONSTRUCTION OF STATUTES.

When a statute is amended and re-enacted with the words, "so as to read as follows," or words of like effect, those parts of the re-enactment embraced in the former law are not considered as repealed and re-enacted, but as law all along continuously from their original enactment; but the new parts are considered as law for the first time from the commencement of the amended act.

8. LIMITATION OF ACTIONS—CONSTRUCTION OF STATUTES.

Section 20, c. 35, Code, amended and re-enacted by chapter 18, Acts 1882, is retroactive upon judgments rendered in favor of the state before its re-enactment.

9. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTES.

Section 20, c. 35, Code is not invalid and void because chapter 18, Acts 1882, re-enacting it, is repugnant to the constitution. (article VI. § 30.

10. CONSTITUTIONAL LAW.

When the principal object of an act of the legislature is expressed in the title, and the act embraces, along with such princi-

pal object other incidental or auxiliary objects germane to the principal object, the act is not repugnant to section 30, art VI. of the constitution, and is valid as to such principal and auxiliary or incidental object.

11. CONSTITUTIONAL LAW.

Generally under said section the language of the title should be construed in its most comprehensive and liberal sense favorable to the validity of the act, so as to bring the contents of the act within the title ; and only where it is very manifest that the contents of the act are not within the title should the act or any part of it be deemed invalid.

OKEY JOHNSON for plaintiff in error.

I.—*Statutes of limitation do not embrace the state unless expressly designated.*—6 Pet. 666 ; 13 Wall 92 ; Com. 18 Wall. 57 ; 28 W. Va. 304 ; 2 W. Va. 441.

II.—*Statutes should be construed as prospective in every instance, except when the intent that they shall operate retrospectively is expressed in clear and unambiguous terms, or such intent is necessarily implied from the language of the statute which would be inoperative otherwise than retrospectively.*—34 W. Va. 524 ; 3 Cranch 399 ; 15 How. 421 ; 24 How. 242 ; 17 Wall. 596 ; 3 Eng. & Am. Enc. L. 758 ; 3 Call 279 ; 10 Gratt. 585 ; 83 Va. 204 ; 14 Gratt. 24 ; 65 Am. Dec. 545 ; 82 Am. Dec. 696 ; 96 Am. Dec. 613 ; 50 Am. Dec. 389 ; 7 Conn. 558 ; 33 Me. 333 ; 39 N. J. L. 555 ; 57 Penn. St. 209 ; 45 Tex. 345.

III.—*The same stringent rule applies with even greater force to Statutes of limitation.*—80 Me. 50 ; 14 Gratt. 24 ; 50 Am. Dec. 389 : 117 Ill. 79 ; 37 Vt. 599 ; 22 Ind. 310 ; 4 Munf. 104 ; 24 W. Va. 327 ; 23 Miss. 269 ; Id. 319 ; 24 Miss. 377 ; 15 How. 421.

IV.—*Section 20 is unconstitutional because it embraces the general object of limitation to all suits of the State, which object is not expressed in the title.*—4 La. An. 297 ; 41 Ala. 9 ; 14 Mich. 497 ; 21 Mich. 236 ; 1 Neb. 182 ; 47 Mo. 29 ; 46 Mo. 288 ; 15 L. R. A. 847 ; 8 W. Va. 74 ; Cool. Con. Lim. 172 ; 8 W. Va. 612 ; 79 Ky. 13 ; 35 N. Y. 449 ; 101 N. Y. 294.

V.—*Section 20 unconstitutional, if treated as amendment, as it violates Sec. 30 Art. VI, of the Constitution.*—Cooley Con. Lim. 184 ; 87 Tenn. 124 ; 98 Ind. 521 ; 58 Mo. 66 ; 8 W. Va. 74 ; 36 W. Va. 782.

EWING, MELVIN & RILEY and J. W. EWING for defendants in error.

I.—*No execution could lawfully issue more than two years after judgment without scire facias.*—Code, ch. 139, sec. 10.

II.—*No execution could lawfully issue more than ten years after date of judgment, none having previously issued thereon.*—Code, ch. 139, sec 10.

III.—*The common-law rule is reversed and statutes of limitation do apply to the state.*—Code, ch. 35, sec. 20 ; Busw. Lim. and Adv. Poss. 150 ; 19 W. Va. 223.

IV.—*To avoid the statute, the party must show himself to be within its exceptions.*—13 Pet. 45.

V.—*Statute is retroactive.*—Busw. Lim. and Ad. Poss. 19, sec. 14, and note an page 20 ; 81 N. Y. 143. *Especially when sufficient time is allowed after passage of state to execute judgment.*—Buswell cited, sec. 230 and note 1 and sec. 14 ; 34 W. Va. 524 ; 24 W. Va. 327–339 ; 13 Pet 45 ; 18 W. Va. 522.

JOHN BASSELL for defendants in error cited : Acts 1875 p. 118; Acts 1882 p. 22; Code (1849) c. 186, s. 12, 13 ; 20 W. Va. 487; 24 W. Va. 327; Code (1869) c. 139, s. 10, 11 ; 13 Pet. 64; 6 Kan. 311 ; 33 N. J. L. 350; 107 U. S. 147.

BRANNON, JUDGE :

This is a writ of error taken by the State to a judgment of the Circuit Court of Ohio county quashing an execution in favor of the State. Was the judgment barred by the statute of limitations, when the execution issued? is the question of the case.

The judgment was rendered in October, 1877; a second execution was returnable to January rules, 1879; and the next one—the one involved here—issued 19th November, 1891. The State contends that its judgment is protected by the maxim, *"nullum tempus occurrit regi"*—no time runs against the king.

Section 20, c. 35, of the Code of 1868, provided that "every statute of limitations, unless otherwise expressly provided, shall apply to the State, but as to claims heretofore accrued the time shall be computed as commencing

when this chapter takes effect." This abolishsd the common-law rule that no time runs against the State.

A difficult question here arises—whether this provision of the Code applies to this judgment. If so, then it is barred by sections 10 and 11, c. 139, of the Code.

In chapter 55, § 19, Acts 1875, is found the provision: "There shall be no limitation to proceedings on judgments on behalf of the State or any claim due the State." The act containing this clause is not a re-enactment of chapter 35, but an independent act relating to the collection of taxes. It does not expressly repeal the section of the Code of 1868 above quoted. That is left standing; but, as there is a repugnancy between the two provisions, and the act of 1875 repeals so much of all acts as conflicts with it, we shall say that it is a partial repeal by clear implication of section 20, c. 35, of the Code of 1868—that is so far as that section would operate to bar judgments in favor of the State and claims due the State; that is, as I think, claims for money demands. But beyond this it did not repeal the said provision of the Code of 1868 making the State subject to every statute of limitations; but that provision would operate against the State in respect to other rights; for instance, her right to lands or torts done to her property. It would be more accurate to say that the act of 1875 operated to make exceptions to section 20 of chapter 35 than to call it a repeal. And that the act of 1875 takes out of section 20 only judgments and debt claims is plain from the fact that the clause is found in an act entitled "An act providing for the collection of taxes;" and, as applicable to debt demands, it would be covered by the title; but, extended to all causes of action in favor of the State, it would be ungermane to the principal object of the title and void. *Shields* v. *Bennett*, 8 W. Va. 74.

Afterwards by act of March 12, 1881 (Acts 1881, c. 13) the legislature amended and re-enacted chapter 30 of the Code, in relation to the collection of taxes; and although it related to the same object as the act of 1875, it left out that clause of the act of 1875 which declared that no statute of limitations should apply to judgments or claims due the state, and thus repealed it.

Some question might be raised whether the acts of 1881 did so repeal that clause on the theory, that the act of 1875 was not a re-enactment of chapter 30 of the Code but an original act, so to speak; whereas the act of 1881 is a re-enactment of chapter 30 of the Code; and that, as the act of 1881 is silent as to the subject of limitations, and so contains nothing in conflict with the limitation clause of the act of 1875, that clause should be held as continuing; and, as repeals by implication can only be allowed where there is plain repugnancy, and where both acts may stand and be executed, we should execute both so far as they do not antagonize, (*State* v. *Enoch*, 26 W. Va. 253)-we ought to consider the said clause of the act 1875 as not repealed by the act of 1881.

But there is another mode of repeal of a statute not based only on repugnancy, and that is, where the later statute makes full and complete provision touching the subject common to both, and it is evident that the legislature intended to review the legislation on that subject, and that the later act should be deemed a full and complete provision upon the subject, the former statute is at an end. *Herron* v. *Carson*, 26 W. Va. 62.

An inspection of the act of 1875 will show that, though not expressly an amendment and re-enactment of Code, c. 30, yet it was intended to be and substantially and impliedly is such, especially as the act of 1875 expressly repealed chapter 30; and as the act of 1881 is in terms an amendment and re-enactment of that chapter, so repealed by the act of 1875, viewing them as in *pari materia,* we are justified in the conclusion that the legislature, by the act of 1881, intended to wholly repeal the act of 1875. Though a later statute be not repugnant to a prior one in all respects, yet if it was clearly intended to take its place it repeals it. Suth. St. Const. §§ 154–156.

Thus the clause of the act of 1875 providing that no limitation should bind the state as to judgments and claims, is repealed. The repealing act is itself repealed. Does this restore section 20 of chapter 35 of the Code? At common-law it would. 1 Minor, Inst. 41; 1 Bl. Comm. 90; Suth. St. Const. § 168; End. Interp. St. § 475. But

we have a canon or rule of construction in section 10, c. 13, of our Code, that "when a law, which has repealed another, is itself repealed, the former law shall not be revived, without express words for the purpose." Now, if this applies, the Code section is not restored, but the common-law rule, that no time runs against the state, which said Code section annulled, would be brought into force again under that principle of law that when a statute repealing the common-law is itself repealed the common-law is restored, as section 10, c. 13, Code, does not apply to statutes repealing common-law but only to statutes repealing statutes. 1 Minor, Inst. 41; *Insurance Co.* v. *Barley*, 16 Gratt. 363, 384; *Booth's Case*, Id. 519, 529.

But I do not think the statute last quoted applies. There has been question whether that statute applies to cases where the repeal of one statute by another is not express, but only implied; but as a repeal, though only by construction or implication, is just as much a repeal as when express—just as much the will of the legislature that the older law shall cease—I think there is no reason why the statute does not apply to repeals by implication as well as to express repeals. So it has been held on similar statutes. End. Interp. St. § 476; *Milne* v. *Huber*, 3 Mc-Lean 212; *Stirman* v. *State*, 21 Tex. 734. See, also, *Philips's Case*, 19 Gratt. 485.

Now, as I remarked above, section 20 of chapter 35 of the Code was broad and comprehensive applying every statute of limitation against the state. The act of 1875 only changed or modified it to a certain extent—that is, prevented its operation as to judgments and claims of the state, leaving it in all other respects operative—simply made an exception to the generality of the operation of the statute; and when that act was itself repealed, and the exception or limitation was no longer in force, said section 20 operates free of that exception. It was only a partial abrogation of section 20. It would have been different, had it been a total abrogation. To hold otherwise would be to say that the common-law rule, that time could not bar applied as to judgments and claims for debt, but as to all other grounds of action time would bar.

Authority sustains the position here taken. The old English statute of Gloucester gave costs to plaintiffs recovering damages. Later acts provided they should not recover costs except on a judge's order. The later acts were repealed, and it was held that the statute of Gloucester still operated and gave costs, though Lord Brougham's Act (13 & 14 Vict.) providing that where an act repealing in whole or part a former act is itself repealed, the last repeal does not revive the former act without words to that effect, was in force. And a case pointedly apt to this case supported by good reasoning is *Smith* v. *Hoyt*, 14 Wis. 252, holding upon a similar statute to ours, that "where an act or part of an act is repealed, it is not revived by a subsequent repeal of the repealing act. But where a statute merely excepts a particular class of cases from the provisions of a previously existing general law, which continues to be in force, the repeal of the excepting statute operates to bring such cases again under the general law.

"The old act gave defendants twenty days in which to answer; later acts gave defendants in foreclosure suits ninety days; and, the later acts being repealed, the court applied the old act, saying: "Where the statute creating the exception is repealed, the general statute, which was in force all the time, would then be applicable to all cases according to its terms. And this would be no violation of the rule of construction before referred to, that the repeal of a repealing act should not revive the act repealed. The act of 1858 was equivalent to a proviso to the general rule that it should not be applicable to foreclosure defendants. But if a proviso creating an exception to the general terms of a statute should be repealed, courts would be bound afterwards to give effect to it according to those general terms, as though the proviso had never existed; and this could not be said to revive a repealed statute. The rule against this relates to absolute repeals, not to cases where a statute is left in force; and all that is done in the way of repeal is to except certain cases from its operation. In such cases the statute does not need to be revived, for it remains in force; and, the exception being taken away, the statute is afterwards to be applied without the exception."

Since writing the above I find the case of *McConiha* v. *Guthrie*, 21 W. Va. 134, the principle of construction in which supports this view. One act—a general one—declared that no dwelling-house should be invaded in condemnation of land for railroads; another later special act declared that a railroad company might in gorges and other specified places construct its road by or through dwelling houses. It was held that the later statute was only a qualification or exception to the former, and the prohibition against taking dwelling houses would apply to all places except the particular places specified in the second act, and an express repeal of the qualifying act would restore the prohibition in the general statute to its original force, and it would then operate as though the qualifying statute had never existed.

So that we may say that section 20, c. 35, was never repealed by the act of 1875, but that the act of 1875 simply qualified or made an exception to it; and thus section 10 of chapter 13 does not hinder the operation of section 20 of chapter 35 after the repeal of the act of 1875. Thus I come to the conclusion that when in 1881 the act of 1875 was repealed, section 20 of chapter 35 of the Code at once applied to this judgment, and the statutory bar of 10 years began to run against it on 12th March, 1881, and had fully run, when on 19th November, 1891, this execution issued. It is very apparent that section 20 of chapter 35 was intended to operate on all judgments, whether prior or subsequent; for it makes special provision as to prior judgments.

There is another reason for holding the judgment barred. An act of February 9, 1882 (chapter 18, Code 1891, p 261) amended and re-enacted section 20 of chapter 35 of the Code, making an unqualified repeal of the common-law rule that no time runs against the state, in the language, "Every statute of limitations, unless otherwise expressly provided shall apply to the state." Is the section as so amended retroactive upon antecedent judgments? A review of the subject confirms my opinion that the point of the syllabus we adopted in *Stewart* v. *Vandervort*, 34 W. Va. 524 (12 S. E. Rep. 736) that statutes are *prima facie* to have no retrospective effect, is correct. Authorities in support

of that point are vast in volume, and from all quarters. I refer to the discussion of the subject in that case, and cite the following additional Virginia and West Virginia cases asserting or conceding it for convenience of reference: *Elliott* v. *Lyell*, 3 Call 268; *Warder* v. *Arell*, 2 Wash. (Va.) 282; *Com.* v. *Hewitt*, 2 Hen. & M. 181; *Day* v. *Pickett*, 4 Munf. 109; *Williams* v. *Lewis*, 5 Leigh, 686; *McCance* v. *Taylor*, 10 Gratt. 580; *Duval* v. *Malone*, 14 Gratt. 24; *Price* v. *Harrison*, 31 Gratt. 114; *Crigler* v. *Alexander*, 33 Gratt. 674; *Ryan's Case*, 80 Va. 385; *Campbell* v. *Fire-Brick, etc., Co.*, 75 Va. 291; *Robertson* v. *Gillenwaters*, 85 Va. 116 (7 S. E. Rep. 371); *Tennant* v. *Brookover*, 12 W. Va. 343; *Hoge* v. *Brookover*, 28 W. Va. 304; *Thornburg* v. *Thornburg*, 18 W. Va. 526.

Nor will it do to say that, on the theory that statutes of limitation concern the remedy, they are construed retrospectively. They are not purely remedial statutes, affording remedy or touching simply remedial process or procedure. In *Duval* v. *Malone*, 14 Gratt. 24, is found a strong case to repel that contention. A statute, by language broad enough to include antecedent indemnifying bonds, enacted a limitation on indemnifying bonds, and it was held to limit suits only on bonds taken after the act.

Without defining a remedial statute, I can assert upon authority that statutes of limitation are no exception to the rule that statutes are *prima facie* future in operation. *Day* v. *Pickett*, 4 Munf. 104; *Duval* v. *Malone*, 14 Gratt. 24; 7 Wait, Act. & Def. 228; Wade, Retro. Laws, § 48; *State* v. *Pinckney*, 22 S. C. 484; *Ward* v. *Kilts*, 12 Wend. 137; *Garrett* v. *Beaumont*, 24 Miss. 377; End. Interp. St. §§ 279, 284, 287. It is a concession in *Spang* v. *Robinson*, 24 W. Va. at page 339.

As retrospective force given to statutes is contrary to the general principles of construction and of justice, I have been much inclined to the opinion that this section should not be made an exception to the rule; but I am compelled to the conclusion that it must be so treated. When we reflect that section 11, c. 139, of the Code at the very time of the act of 1882 subjected all judgments, past or future, to its bar by its very terms; and when we reflect, that with

knowledge that the section applied to prior judgments the legislature applied that section to state judgments by the strong, broad language, "every statute of limitation, unless otherwise expressly provided, shall apply to the state," without qualifying or otherwise providing; and when we reflect further that section 11, c. 139, as it had been provided that no execution on judgments should issue after ten years, expressly excepted state judgments, and the same legislature afterwards amended that section by striking out that exception of the state judgments without any reservation as to prior judgments, thus harmonizing this section 11 with their amendment of section 20, c. 35—we are almost inevitably forced to the opinion that it intended to bring state judgments to just the same rule as that governing judgments of individuals.

Was the legislature oblivious to the fact that the citizen's judgment, no matter when rendered, fell under the ban of that section? Did it forget so common, so important a statute as that limiting judgments? Add to this the further fact that this section 20, as it was in the first edition of the Code of 1868, had the provision that as to state judgments existing at its adoption past time should not be computed, but only that running after the commencement of the Code, whereas in the re-enactment of the section in 1882 that provision is left out, and that this is the only change, this strengthens us in the conviction that it was intended to bring state judgments within the retroaction of section 11, c. 139. It was, in effect, an amendment of that section, bringing state judgments under it. Why should they not be? If you give peace and repose to a debtor against a private judgment, why not against a public one? Repose is a main principle calling for statutes of limitations. It is to be preferred, if consistent with fair construction, to give the act such application as will grant peace to a debtor, against whom a judgment was had in October, 1877, and who had not been called on by execution to pay for almost thirteen years—until November, 1891.

However, the question, whether the act of 1882 taken alone is retroactive, while it may be in some cases impor-

tant and calling upon us for decision, is not important in the present case, as the judgment is barred anyhow, regardless of that question. Section 20, c. 35 placing the state under statutes of limitation operated upon all causes of action from 1st April, 1869, except that judgments and money demands were excepted out of it by the act of 1875 ; and, this being repealed in 1881, such judgments and claims again fell under section 20. So from April 1, 1869, down to the present the statute of limitations operated upon the state, not merely from its re-enactment in 1882, except for a few years as to judgments and debt claims taken out of it by the act of 1875 and again put under it by repeal of that act. The re-enactment of 1882 made no new law.

Where a law is amended and re-enacted the portions of the amended sections which are simply repeated from the old law are not considered as repealed and re-enacted, but as law continuously from their first enactment by the old act, and not born of the re-enactment; while the new or changed portions are law for the first time from the re-enactment. *Price* v. *Harrison,* 31 Gratt. 122 ; *Ely* v. *Holton,* 15 N. Y. 595. That it is within the power of the legislature to enact a retroactive statute of limitations, unless it cut off all remedy at once without leaving a reasonable time for the enforcement of the right, is conceded and clear on abundant authority. Cooley, Const. Lim. 465, 466. In this instance nearly seven years' time was left after the act of 1882 before the judgment would be barred—surely more than a reasonable time—and for that matter the state could at once cut off its own remedy. That section 11, c. 139, Code does act upon prior judgments is clear both from its words and from *Werdenbaugh* v. *Reid,* 20 W. Va. 588 ; *Shipley* v. *Pugh,* 23 W. Va. 487; and *Spang* v. *Robinson,* 24 W. Va. 327. We think this holding is not inconsistent with *Stewart* v. *Vandervort,* 34 W. Va. 524 (12 S. E. 736). Section 20 of chapter 35, treated as an original act passed in 1882, would thus retroact and count against the judgment time from January, 1879, to November 19, 1891, and bar it.

But it is stoutly claimed that the act of 1882 is unconstitutional. If so, section 20, c. 35, would remain as it was in

the Code of 1868, unaffected by the act of 1882; and as it certainly designed to cover all state judgments, it would, for reasons above given, operate against this judgment from 12th March, 1881, and bar it. It is not claimed that its original enactment as part of the Code was unconstitutional, but only its re-enactment in 1882. But we do not think the act of 1882 unconstitutional. It is said to be so on two grounds. One is that it embraces the general object of limitations to all suits of the state—an object not expressed in the title, contrary to section 30, art. VI of the constitution, that no act "shall embrace more than one object, and that shall be expressed in the title."

The title of the act is, "An act to amend and re-enact chapter thirty-five of the Code of West Virginia, concerning the recovery of claims due the State." If we so held, it would be like an earthquake in the legislation of the state, overthrowing many, very many, provisions found in our Code incorporated into it by acts amending and re-enacting a large number of its chapters through the long period from its original enactment in 1868. We should be more than usually cautious in reaching a conclusion fraught with such disastrous results consequentially flowing from it. We must in every case presume an act constitutional, and in doubt hold it so. *Bridges* v. *Shallcross*, 6 W. Va. 562.

In *Montclair* v. *Ramsdell*, 107 U. S. 147 (2 Sup. Ct. 391) touching the same point the syllabus is: "The conflict between the constitution and a statute must be palpable to justify the judiciary in disregarding the latter upon the sole ground that it embraces more than one object, or that, if there be but one, it is not sufficiently expressed in the title." *C. & O. R'y Co.* v. *Patton*, 19 W. Va. 648.

*Shields* v. *Bennett*, 8 W. Va. 74, holds that "the most liberal construction favorable to the validity of legislation which the language of these provisions admits should be adopted."

The point of the objection is that the title of the act says that its object is the collection of claims due the state, whereas its body contains another a second distinct object, and that not expressed in the title, a statute of limitations against the state; and that, too, not merely a limitation

against money claims, but also as to suits to recover land of the state or any other action it could bring. This is true, and yet does not render it void. The title of the act says that it is to amend and re-enact chapter 35 of the Code. That chapter contained this section. But the object is further defined to be the recovery of moneys due the state. The act makes detailed provisions for suits, sales under executions, sale of land and debts of the state by the auditor, and other provisions touching the recovery of moneys due the state, and in section 20 provides limitations as to state suits. This is not foreign, but pertinent and germane, to the general object and purpose of the act; an incident fairly connected with the main or general purpose of the act, not another separate object.

*Shields* v. *Bennett,* 8 W. Va. 74, discusses this subject and lays down these principles : "When the principal object of an act is expressed in the title and the act embraces with such principal object other auxiliary objects, the act, if not otherwise objectionable, is valid, not only as to the principal, but likewise as to the auxiliary objects ;" and that generally the language of the title should be construed in its most comprehensive sense.

Cooley, Const. Lim. 172, properly states the law to be: "The general purpose of this provision is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone would not only be unreasonable, but would actually render legislation impossible. The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection."

Suth. St. Const. is as follows : "None of the provisions of a statute will be held unconstitutional when they all relate, directly or indirectly, to the same subject, have a natural connection, and are not foreign to the subject expressed in the title."

The title need not be a detail or index or abstract of the

contents of the act. It may include numerous provisions reasonably indicated by the title. *Montclair* v. *Ramsdell* 107, U. S. 147 (2 Sup. Ct. 391).

Now, would it not be going very far beyond the purpose, design and safety contemplated by the clause of the constitution in hand to say, that in an act entitled an act "concerning the recovery of claims due the state," and giving remedies by suits and executions, a statute of limitations as to the state may not be incorporated without rendering it open to the objection that it embraces two different objects, or that one of them is not expressed in its title? Giving remedies, may it not limit them? Is it not cognate and kindred to the subject? I shall refer to the opinion and authorities cited in *Slack* v. *Jacob*, 8 W. Va. 612, for a full discussion of the subject, without further discussion of it here. I will add that in *Bowman* v. *Cockrill*, 6 Kan. 311, it is held that "a statute of limitations may be inserted in a tax law for the purpose of aiding and assisting in the collection of taxes." "A subject expressed in the title includes all subsidiary details, which are means for carrying into effect the object or purpose of the act disclosed in that subject." Suth. St. Const. § 9.

This is an amendatory act, and in Suth. St. Const. § 101, the law is stated to be that "the constitutional requirement under discussion, as applied to acts of this character, when they contain matter which might appropriately have been incorporated in the original act under its title, is satisfied generally if the amendatory or supplemental act identifies the original act by its title, and declares the purpose to amend or supplement it. Under such a title alterations by excision, addition, or substitution may be made."

It can not be doubted that under the title of the act passed in 1868, establishing a code of laws, it was valid to insert the limitation section 20 in chapter 35. · The act of 1882 expresses in its title that it is to amend chapter 35 of the Code, relating to recovery of money due the state ; and thus informed every one that it was that particular chapter of the act adopting a Code, which already contained this limitation section 20, that was to be amended and re-enacted. The numerous authorities cited by Suther-

land seem to support his text, and it is supported by the opinion by Judge DENT in *State* v. *County Court*, 37 W. Va. 811 (17 S. E. Rep. 379). The only question, if question there can be, is as to its application to such an act as our Code act. If I entertained any doubt in this matter it would arise from the fact that section 20 provides limitations for not only suits for moneys due the state, but other suits also. But can any one say that it was not competent and proper to insert this with all this scope in the Code act? And being properly in the Code act, can any one say that it could not, in the re-enactment of the chapter, be again included with the same scope.? If so, then it must be narrowed so as to limit suits for only moneys due the State, and limitation of other suits be made the subject of an original act; for it could not be put in this act even by specifying the subject of limitations in the title, as it would make the act contain two different objects. This would give a very technical and inconvenient construction to the constitution. Further, I am of opinion that section 20, in all its scope, is constitutional.

But let us suppose that, so far as it subjects suits for moneys due the state to limitations, it is sheltered under its title as dealing with a subject germane to the principal subject of the act, but as to actions for other causes it would be invalid. Must we overthrow the entire section? True, the section is in itself a unit and indivisible, but not so in its application to the subjects to which it applies. Our constitution says that when any object embraced in an act is not expressed in the title, the act shall be void only as to the unexpressed object. And the general law is that if the part expressed in the title is not so intimately connected with that part which is unexpressed as to prevent the former from standing and being executed, it shall stand and have operation. Cooley, Const. Lim. 148. It would seem to further the purpose of our constitution, and not be going too far, to say that section 20 would be applied in all proceedings for recovery of moneys due the State and be abortive as to other actions; and this is an execution to recover money on a judgment. Shall we split the section to overthrow it wholly or to support it in part?

The second respect in which the section is said to be unconstitutional is stated thus in the brief: "But, if section 20 of chapter 35 is to be considered as an amendment to the various limitation statutes as such, it is clearly unconstitutional," because of the provision of the constitution that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at large in the new act." The proposition of counsel above given is guarded and conditional.

The conclusion of unconstitutionality would be correct were the premise or hypothesis sound; but it is not, since the section is not to be considered an amendment to all the numerous statutes of limitations, in a legal point of view, for the purposes of the clause of the constitution quoted. It simply, by general enactment, makes the State's rights subject to them. It does not amend or change them, making them different from what they were, but merely brings new matters within the pale of their operation. The act sets out in full detail chapter 35 as it is re-enacted, including this section, so there can be no objection on that score, and I do not understand that there is.

Judgment affirmed.